# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 12, 2023

Lyle W. Cayce
Clerk

No. 22-10340

Ben E. Keith Company,

*Plaintiff*,

*versus*

Dining Alliance, Incorporated,

*Defendant/Counter-Claimant—Appellant*,

*versus*

Foodbuy, L.L.C.,

*Counter-Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:20-CV-133

Before Jones, Clement, and Haynes, *Circuit Judges*.

Edith H. Jones, *Circuit Judge*:

Although modern business entities may organize in complex ways unknown in the past, the criteria for diversity of citizenship jurisdiction as to LLCs has been firmly established in this circuit since 2008. Dining Alliance unacceptably hid the ball with respect to elementary jurisdictional facts

during the entire course of this litigation, including on appeal. The district court dismissed its third-party claims with prejudice as a sanction for that willful abuse of the judicial process. Finding no abuse of discretion, we AFFIRM.

## BACKGROUND

In February 2020, Ben E. Keith Company, a Texas citizen, brought state-law claims in federal court against "Dining Alliance Inc." Prior to the suit, however, Dining Alliance Inc. had converted into Dining Alliance LLC ("Dining Alliance"), whose citizenship may include both Texas and Delaware. It is therefore possible that from the outset of the case, the parties were not diverse and jurisdiction was lacking.

This potential jurisdictional defect was not recognized because Dining Alliance originally answered under the name Dining Alliance Inc. and represented itself as a Massachusetts citizen. Though Dining Alliance's in-house counsel claims to have informed the company's attorneys in July 2020 that Dining Alliance Inc. was defunct, the company proceeded to litigate variously under both names. For instance, in December 2020, Dining Alliance asserted third-party state-law claims against Foodbuy LLC—a citizen of Delaware, Georgia, and North Carolina—under the name Dining Alliance Inc. Yet in that same pleading, and without leave, it changed the case caption to Dining Alliance LLC. Four months later, Dining Alliance first revealed in a footnote within a motion to continue that Ben E. Keith named the wrong entity. Though it assured the court that the parties would file a stipulation to correct the record, it never filed such a document. Only in October 2021 did Dining Alliance correct its pleadings; and even then, it still failed to plead the LLC's complete citizenship and make proper jurisdictional allegations.

Throughout the suit, Foodbuy maintained that it was "without knowledge or information sufficient to form a belief regarding the truth of [Dining Alliance's] allegations as they relate to its proper corporate identity or residence, as [Dining Alliance] has filed multiple pleadings interchangeably referring to themselves as 'Dining Alliance Inc.' and/or 'Dining Alliance LLC.'" Dining Alliance, for its part, resisted jurisdictional discovery. Foodbuy was impelled to move to dismiss for lack of jurisdiction in November 2021. In response, the district court ordered each party to "file a document establishing its citizenship for diversity purposes, supported by affidavit or declaration." The court warned that failure to comply could result in dismissal.

Dining Alliance's response conceded lack of diversity of citizenship with Foodbuy, but it assured the district court that diversity existed between it and Ben E. Keith. The district court held that Dining Alliance failed to comply with its order because the company did not list its corporate members' principal places of business or the individual LLC members' citizenship. *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) ("[L]ike limited partnerships and other unincorporated associations or entities, the citizenship of a LLC is determined by the citizenship of all of its members."); *see also Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96, 110 S. Ct. 1015, 1021 (1990). It ordered Dining Alliance to file an amended response providing "all of the information required for the court to determine the citizenship of" its members. And it again warned that failure to comply could result in sanctions.

Dining Alliance's next filing did not identify higher-level members, and it claimed anonymity for some members but purported to provide those members' current residences. One of the anonymous members allegedly resided in Texas, placing in doubt Dining Alliance's previous assertion of diversity with Ben E. Keith. The court once again held that Dining Alliance

had not complied with its order and requested legal authorities bearing on sanctions and its subject matter jurisdiction.[1] The court also set a show-cause hearing to ascertain why Dining Alliance and its attorneys should not be sanctioned. Before that hearing, Ben E. Keith and Dining Alliance settled and dismissed their claims against one another, leaving only the third-party state-law claims between Dining Alliance and Foodbuy. Dining Alliance then offered additional, though still incomplete, information to the court and for the third time amended its citizenship.[2]

Dining Alliance's attorneys and in-house counsel appeared at the show-cause hearing. They disclaimed any intentional deception and asserted that their representation was merely inept. They also claimed they were "unable" to obtain the information necessary to comply fully with the court's orders. Characterizing Dining Alliance's overall conduct as a "cover-up," the court found that Dining Alliance and its attorneys violated various federal and local rules, the most important being their duty of candor. The court then invoked its "inherent authority" to dismiss Dining Alliance's claims against Foodbuy "as a sanction for failure to comply with the Court's orders and the Court's rules."

Dining Alliance moved to alter the judgment on the ground that the sanction operated as an adjudication on the merits pursuant to Rule 41(b) of

---

[1] Ben E. Keith amended its complaint to include federal claims. Consequently, one question was whether that amendment cured any jurisdictional defect that existed at the outset of the case.

[2] Dining Alliance first claimed it was a citizen of Delaware, Florida, New York, and the Channel Island of Jersey. Its second filing expanded this list to include California, Connecticut, Indiana, New Jersey, Texas, and England. And its third filing included Nebraska, Puerto Rico, and the Cayman Islands. Indeed, Dining Alliance has yet to reveal its citizenship for diversity purposes, as it again amended its representations regarding citizenship while on appeal to this court.

the Federal Rules of Civil Procedure.  Such a sanction, it argued, was inappropriate because the court did not find that Dining Alliance or its counsel engaged in intentional misconduct.  The district court denied the motion, clarifying that, while it "did not want to say that the *attorneys* acted intentionally to deceive the court," it found that *Dining Alliance* had intentionally failed "to comply with the Court's orders." (emphasis added).  Moreover, the court found that no lesser sanction would be appropriate because dismissal "without prejudice would allow Dining Alliance to flout court orders and move on to the next venue without penalty[,] and it would punish innocent parties who would again have to undertake a defense."

Dining Alliance appealed the district court's judgment and has since refiled its case against Foodbuy in North Carolina state court.  *See Dining Alliance, LLC v. Foodbuy, LLC*, No. 22-cvs-5219 (Mecklenburg Cnty., N.C., Mar. 31, 2022).

## DISCUSSION

Dining Alliance contends that the district court lacked jurisdiction to dismiss its claims with prejudice.  It also argues that the district court abused its discretion in imposing those sanctions.  We reject both propositions.

### A. Collateral Jurisdiction

Dining Alliance contends that the district court lacked subject matter jurisdiction after Ben E. Keith dismissed its federal claims because the district court never exercised supplemental jurisdiction over Dining Alliance's third-party state-law claims against Foodbuy.  That argument assumes the district court at some point had jurisdiction over the claims between Ben E. Keith and Dining Alliance.  But the district court never decided that issue because Dining Alliance failed to provide the information necessary to make that determination.

No. 22-10340

In ordering sanctions, the district court instead relied on its collateral jurisdiction. Such jurisdiction permits a federal court to consider issues collateral to the merits even where it lacks subject matter jurisdiction. *Willy v. Coastal Corp.*, 503 U.S. 131, 137–38, 112 S. Ct. 1076, 1080–81 (1992). Common examples of "collateral" issues include costs, attorney fees, sanctions, and contempt proceedings, as such proceedings do "not signify a district court's assessment of the legal merits of the complaint." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396, 110 S. Ct. 2447, 2456 (1990).

This court has not addressed whether a case-dispositive sanction that operates "on the merits" under Rule 41(b) can fall within a district court's collateral jurisdiction. But the majority of circuits that have addressed the issue have held that such sanctions are permissible. *Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005); *El v. AmeriCredit Fin. Servs., Inc.*, 710 F.3d 748, 751 (7th Cir. 2013); *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1091 (D.C. Cir. 1998); *see also In re Exxon Valdez*, 102 F.3d 429, 431 (9th Cir. 1996) (Rule 37 sanctions).[3] As the Ninth Circuit reasoned, though such a sanction terminates the action, it does "not signify a district court's assessment of the legal merits of the complaint." *Exxon Valdez*, 102 F.3d at 431 (quoting *Willy*, 503 U.S. at 137, 112 S. Ct. at 1080) (quotation marks omitted). Consequently, it falls within the district court's "collateral" jurisdiction. *Id.*

We agree. A case-dispositive sanction does not require the district court to assess a claim's merits, weigh the evidence proffered in support of

---

[3] *See also Bedford v. Nowlin*, 2021 WL 3148953, at *2–5 (10th Cir. July 26, 2021) (Rule 37 sanctions); *cf. Crenshaw-Logal v. City of Abilene*, 436 F. App'x 306, 310 (5th Cir. 2011) (per curiam) (Dismissal for lack of subject matter jurisdiction "ordinarily should be without prejudice" absent "special circumstances that warrant deviation from the general rule.").

or against the claim, or decide an issue that bears on the claim's legal substance. It is a purely procedural order. *See Exxon Valdez*, 102 F.3d at 431; *see also Hernandez v. Conriv Realty Assocs.,* 182 F.3d 121, 123 (2d Cir. 1999). Such a sanction fits squarely within the boundaries of a court's collateral jurisdiction, as it "does not raise the issue of a district court adjudicating the merits of a 'case or controversy' over which it lacks jurisdiction." *Willy*, 503 U.S. at 138, 112 S. Ct. at 1080–81.

It is true that Rule 41(b) states that such sanctions operate "as an adjudication *on the merits*." (emphasis added). But the Supreme Court clarified that the phrase *on the merits* "has come to be applied to some judgments . . . that do *not* pass upon the substantive merits of a claim." *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 502, 121 S. Ct. 1021, 1025 (2001) (emphasis in original). The Court therefore held that the phrase as used in Rule 41(b) signifies only that the litigant is barred from refiling the claim in the court of dismissal. *Id.* at 506, 1027. Consequently, the fact that a case-dispositive sanction operates "on the merits" under Rule 41(b) does not transform it into an assessment of the claim's substantive legal merits.

The cases relied upon by Dining Alliance predate *Semtek* and are undercut by its reasoning.[4] The Second Circuit concluded that the res judicata effect of case-dispositive sanctions impermissibly interferes with

---

[4] Dining Alliance also cites *Christopher v. Stanley-Bostitch, Inc.*, 240 F.3d 95 (1st Cir. 2001), *Olcott v. Delaware Flood Co.*, 327 F.3d 1115 (10th Cir. 2003), and *Borchardt v. Minnesota*, 264 F. App'x 542 (8th Cir. 2008) (per curiam). Those cases, however, did not address the question at hand and are thus unhelpful. *Christopher*, 240 F.3d at 100 (vacating a district court's order, entered after it determined it lacked subject matter jurisdiction and should remand, that "judicially stopped" plaintiff from recovering more than $75,000 because the order was not "inextricably intertwined with the remand determination"); *Olcott*, 327 F.3d at 1123 (holding the district court had jurisdiction over the case); *Borchardt*, 264 F. App'x at 543 (modifying judgment dismissing case with prejudice for lack of jurisdiction to be without prejudice).

state court jurisdiction. *Hernandez,* 182 F.3d at 123. And the Third Circuit reasoned that case-dispositive sanctions issued without subject matter jurisdiction impermissibly "determine[ ] the cause of action." *In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 156 (3d Cir. 1997). *Semtek*, however, rejected these concerns in holding that a case-dispositive sanction does not inherently prohibit a party from refiling in state court or require a court to pass upon a claim's substantive merits. *Semtek*, 531 U.S. at 505–06, 121 S. Ct. at 1027.

Here, the district court's sanction was purely procedural. It therefore fell within the court's collateral jurisdiction.

## B. Propriety of the Sanction

### 1. Standards

The district court invoked its inherent power to dismiss Dining Alliance's claims.[5] We take this opportunity to clarify both the circumstances that justify a district court in imposing such sanctions and our appellate standard of review.

The parties first disagree as to whether a district court must find a "clear record of delay or contumacious conduct," *Snider v. L-3 Commc'ns Vertex Aerospace, LLC*, 946 F.3d 660, 678 (5th Cir. 2019), or "bad faith or willful abuse" of the judicial process, *Vikas WSP, Ltd. v. Econ. Mud Prods. Co.*, 23 F.4th 442, 455 (5th Cir. 2022). To the extent those standards may fail to overlap, Supreme Court precedent and our case law require district courts to find "bad faith or willful abuse" of the judicial process. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46, 111 S. Ct. 2123, 2133 (1991);

---

[5] Foodbuy contends that the district court did not need to invoke its inherent power and could have instead relied upon, for instance, Rule 37 or Rule 41(b). That may be true, but the district court explicitly stated that it was exercising its inherent power.

*Durham v. Fla. E. Coast Ry. Co.*, 385 F.2d 366, 368 (5th Cir. 1967); *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 & n.23 (5th Cir. 1995) (collecting cases); *see also Ali v. Johnson*, 259 F.3d 317, 318 (5th Cir. 2001) ("This court is always bound by earlier controlling precedents, if two of our decisions conflict.").

Dining Alliance next argues that the district court must find that the sanctioned litigant's conduct prejudiced the opposing party. It cites in support *FDIC v. Conner*, 20 F.3d 1376, 1381 (5th Cir. 1994), and *Law Funder, LLC v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019). Those cases, however, belong to a "line of cases involving dismissals for discovery order violations." *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 966 F.3d 351, 357 (5th Cir. 2020); *see also Gonzalez v. Trinity Marine Grp.*, 117 F.3d 894, 898 (5th Cir. 1997) (distinguishing case-dispositive sanctions issued pursuant to Rule 37(b) from those issued pursuant to the court's inherent power). Precedent concerning sanctions issued pursuant to the court's inherent power does not require a showing that the opposing litigant was prejudiced. *See Chambers*, 501 U.S. at 50–51, 111 S. Ct. at 2136; *Flaksa v. Little River Marine Constr. Co.*, 389 F.2d 885, 887–88 (5th Cir. 1968); *Woodson*, 57 F.3d at 1417–18; *Gonzalez*, 117 F.3d at 897–99; *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 76–80 (5th Cir. 2011) (per curiam); *Snider*, 946 F.3d at 678–79. For good reason: A court invokes its inherent power to vindicate its own interests, not the interests of the opposing litigant. *See Flaksa*, 389 F.2d at 887; *Snider*, 946 F.3d at 678.[6]

The parties additionally dispute the appellate standard of review for case-dispositive sanctions issued pursuant to a court's inherent power. Dining Alliance contends that this court conducts a two-step evaluation: review the district court's *invocation* of its inherent power de novo, then

---

[6] Even if a prejudice showing was required, it was obviously made here: Dining Alliance's runaround required Foodbuy to defend itself for more than a year in a court that likely lacked subject matter jurisdiction.

review the *sanctions themselves* for abuse of discretion. *See Vikas*, 23 F.4th at 455. Foodbuy, in contrast, argues that the abuse of discretion standard applies. *See Snider*, 946 F.3d at 678. This court has long held that the exercise of a court's inherent power to impose litigation ending sanctions "is subject to review for abuse of discretion." *Flaksa*, 389 F.2d at 887. The Supreme Court agrees. *See Chambers*, 501 U.S. at 55, 111 S. Ct. at 2138 ("We review a court's imposition of sanctions under its inherent power for abuse of discretion."). To the extent this court conducts a de novo review, it does so only to assure that the district court imposed sanctions "in the interest of the orderly administration of justice," rather than for an anterior or extraneous reason. *Flaksa*, 389 F.2d at 887; *see also id.* at 887 nn.2–3 (collecting cases). *Compare with FDIC v. Maxxam*, 523 F.3d 566, 593 (5th Cir. 2008) (vacating inherent-power sanction that was not issued to protect "the court's own judicial authority or proceedings").

To sum up our conclusions, a district court may invoke its inherent power to dismiss claims with prejudice in order to protect "the integrity of the judicial process." *Brown*, 664 F.3d at 78; *see also Chambers*, 501 U.S. at 44–46, 111 S. Ct. at 2132–33; *Flaksa*, 389 F.2d at 887. It must find that the litigant acted in bad faith or willfully abused the judicial process.[7] *Durham*, 385 F.2d at 368; *Woodson*, 57 F.3d at 1417; *Gonzalez*, 117 F.3d at 898. It must also find that "lesser sanctions would not serve the best interests of justice." *Brown*, 664 F.3d at 77 (internal quotation marks and citation omitted); *see also Gonzalez*, 117 F.3d at 898. It should go without saying that the district court

_____

[7] The objectionable conduct at issue must typically be attributable to the client. *Woodson*, 57 F.3d at 1418. But where "an attorney's conduct falls substantially below what is reasonable under the circumstances," *Link v. Wabash R.R.*, 370 U.S. 634 n.10, 82 S. Ct. 1386, 1390 n.10 (1962), the party may not "avoid the consequences of the acts or omissions of [his] freely selected agent," *id.* at 633–34, 1390.

must articulate its reasons for imposing sanctions under its inherent power sufficiently to enable appellate review.

On appeal, this court will review the sanction for abuse of discretion. *Chambers*, 501 U.S. at 55, 111 S. Ct. at 2138; *Flaksa*, 389 F.2d at 887. Still, our review is "particularly scrupulous," as dismissal with prejudice "is an extreme sanction." *Snider*, 946 F.3d at 678 (internal quotation marks and citation omitted).

## 2. Application

*Willful abuse.* Dining Alliance argues that the district court imposed the sanction *only* for violations of the jurisdictional orders. It asserts that any failure to comply with those orders was attributable to counsel, not Dining Alliance. And it contends that counsel's mistakes, both as they relate to the jurisdictional orders and to the course of litigation, do not amount to bad faith or a willful abuse of the judicial process.

Contrary to Dining Alliance's assertion, the district court found that Dining Alliance itself willfully abused the judicial process based on the *totality* of its litigation misconduct, which culminated in its refusal to obey the court's orders.[8] *See Chambers*, 501 U.S. at 50–51, 111 S. Ct. at 2136 (course of litigation conduct can evidence willful abuse). In its original pleading, Dining Alliance, acting through in-house counsel, misstated the company's name, corporate form, and citizenship. That misstatement was reckless

---

[8] Our caselaw is deeply divided as to whether a district court must find bad faith or willful abuse by a preponderance of the evidence or by clear and convincing evidence. *Compare Flaksa*, 389 F.2d at 887–88, *Woodson*, 57 F.3d at 1417–18, *Gonzalez*, 117 F.3d at 897–99, *Brown*, 664 F.3d at 76–80, *and Snider*, 946 F.3d at 678–80 (applying preponderance of the evidence standard), *with Crowe v. Smith*, 261 F.3d 558, 563 (5th Cir. 2001); *In re Moore*, 739 F.3d 724, 730 (5th Cir. 2014); *and Vikas*, 23 F.4th at 455 (applying clear and convincing evidence standard). Either standard is satisfied here.

because the company's transformation into Dining Alliance LLC should have been and apparently was known at the time.[9]  When Dining Alliance's in-house counsel discovered the misrepresentation, he failed to ensure that the company's attorneys immediately alerted the court and amended their pro hac applications to appear in the Northern District of Texas on Dining Alliance LLC's behalf.  Later, he approved an amended complaint that not only altered the case caption without leave of the court, but also brought claims against Foodbuy in the name of Dining Alliance Inc., again misrepresenting the company's name, corporate form, and citizenship.  Though notified of this anomaly by Foodbuy, Dining Alliance did not amend its complaint until October 2021.  Yet again, it failed to plead its proper citizenship and make jurisdictional allegations.  And despite the ongoing confusion regarding its corporate form and citizenship, Dining Alliance refused Foodbuy's requests for jurisdictional discovery.  The district court found that this train of misconduct can be directly attributed to Dining Alliance, and we agree.

But Dining Alliance's wrongdoing did not end there.  When the district court ordered Dining Alliance to disclose the LLC's citizenship, it failed to comply after being informed by both Foodbuy and the district court of this circuit's well-established law.  *See Harvey*, 542 F.3d at 1080.  In particular, Dining Alliance misrepresented that it and Ben E. Keith were diverse.  When given a second chance, Dining Alliance again refused to provide the information necessary to determine its citizenship.  And it has yet to comply.[10]  Considering Dining Alliance's willful disregard for the

_____

[9] Dining Alliance included Dining Alliance LLC in its certificate of interested persons just eleven days after it filed its answer.

[10] Dining Alliance asserts that it was unable to reveal the identities of all its members because that information was not within its possession and protected by certain

No. 22-10340

district court's orders in combination with its other malfeasance, we cannot say the district court erred in finding that Dining Alliance's course of conduct amounted to a willful abuse of the judicial process.

*Lesser sanctions.* Dining Alliance argues that the district court did not consider lesser sanctions before dismissing its claims. This contention is belied by the record.[11] The district court warned Dining Alliance on two separate occasions that its failure to comply with the court's orders may lead to sanctions, including dismissal. The failure of such express warnings permitted the court to infer that less onerous sanctions would not address the offensive conduct. *See Brown*, 664 F.3d at 78. The district court also provided Dining Alliance with two opportunities to produce complete information about its citizenship, which itself is a lesser sanction. *See Taxotere*, 966 F.3d at 360. Moreover, the district court ultimately found that "[n]o lesser sanction than dismissal with prejudice is appropriate." The district court did not err in finding that lesser sanctions would not serve the best interests of justice.

We hasten to add, however, that the court's dismissal, though indeed a significant sanction, could not and did not end the litigation, because, pursuant to *Semtek,* 531 U.S. at 505–06, 121 S. Ct. at 1027, Dining Alliance

---

confidentiality agreements. As the district court found, these "excuses" are unavailing because Dining Alliance "never sought any relief from the orders." If, because of claimed confidentiality, Dining Alliance was unable to provide the names and residences of all LLC members in camera for review by the court, then of course it could not prove federal diversity jurisdiction.

[11] It is also undermined by Dining Alliance's position that the imposition of lesser sanctions, such as attorney fees, would have been inappropriate.

filed a new lawsuit in North Carolina, whose courts will determine whether it can go forward under state law.[12]

## CONCLUSION

Based on the foregoing record, the district court neither lacked jurisdiction nor abused its discretion in dismissing Dining Alliance LLC's third-party claims with prejudice as a sanction for its willful abuse of the judicial process. The judgment of the district court is AFFIRMED.

---

[12] In this scenario, the "greater sanction" might have consisted of attorneys' fees, but it is not our place to second-guess the district court's reasonable option.

No. 22-10340

HAYNES, *Circuit Judge*, concurring in part, dissenting in part:

I agree that Dining Alliance should have been sanctioned for its conduct in continuing to fail to follow the district court's jurisdictional discovery directives. Given the fact that jurisdiction depends on the citizenship of the owners of the LLC, it was not proper to simply ignore the district court's requests. This case has a strange twist to it, though, because it is unclear what the nature of the sanction actually is. As described at the end of the majority opinion, Dining Alliance has filed the same lawsuit in state court in North Carolina. If, in fact, it is not barred by the dismissal with prejudice (as that opinion suggests), then the sanction was not a sanction at all, and this appeal should have been dismissed. On the other hand, if the dismissal with prejudice does preclude any further litigation, then it is the most severe sanction. While the district court did not immediately enter that sanction, in my view, it failed to address an obvious "lesser sanction" which is awarding the attorney's fees incurred by Foodbuy in addressing the jurisdictional issues.[1] *See, e.g.,* Fed. R. Civ. P. 37(b)(2)(C). Thus, I would remand to address these points.

---

[1] The majority opinion suggests this would be a "greater sanction," but that is true only if the dismissal is no sanction at all because it does not actually prejudice the state court filing (dismissal for lack of jurisdiction is not a sanction).